Union Pacific Railroad Company form is right. Ms. Murphy, you have the opening. Good afternoon, Your Honor. May it please the court. Appellant Aisha Wright appeals the district court's order dismissing her retaliation claim pursuant to Title VII and her wrongful discharge retaliation claim under the Railroad Labor Act. By her appeal, Appellant demonstrates that the allegations set forth in her second amended complaint support her retaliation claim under Title VII and fully meet the requirements set forth by Federal Rule of Civil Procedure 8A2, as interpreted in case law by the United States Supreme Court and the Fifth Circuit. By her appeal, Appellant further demonstrates through the United States Supreme Court authority and Fifth Circuit precedence that her complaint invokes the district court's jurisdiction under the Railway Labor Act in circumstances such as hers. Ms. Wright's appellant's complaint sets forth factual allegations that she was a union employee employed by a railroad company covered by the Railway Labor Act. She was going to be written up. She requested union representation. Appellee agreed to provide her with union representation and yet charged her with insubordination and discharged the appellant. After the appellant did not agree to the union representation suggested by the carrier. The allegations set forth in Ms. Wright's complaint amounts to violations under 45 U.S.C. 152 third and fourth for interfering with Appellant Wright's free choice of the union representative and also because the carrier demonstrated anti-union animus in the discharge of her employment. In determining whether the district court has subject matter jurisdiction over Appellant's claim, it is proper to first determine whether Appellant's claim amounts to a minor dispute or a major dispute under the Railway Labor Act. If Appellant's claims were to require interpretation of the collective bargaining agreement between the union and the carrier, Appellant's claims would be considered minor and subject to the arbitration mechanism set forth by the Railway Labor Act. If, however, Appellant's claims do not seek interpretation of the collective bargaining agreement, but instead seek to assert a right not provided by the party's collective bargaining agreement, Appellant's claim is defined as a major dispute and is not subject to the jurisdiction of the arbitration mechanisms and instead subject to the jurisdiction of district court. In the Fifth Circuit case of Care Flight versus Office, the Fifth Circuit expressly found that when a dispute does not grow out of the interpretation or application of the collective bargaining agreement, that claim is rightly in front of the district court. Counsel, let me let me stop you talking about the allegations in the complaint. I mean, as I see her, her RLA claim, I see it as a minor dispute because doesn't it arise under the collective bargaining agreement? I mean, isn't the right to coaching to union representation during that? Doesn't that arise under the CBA? Wouldn't it be a minor dispute? No, there's a distinction. The appellee argues that Ms. Wright is claiming a right to representation, and that's not what she's claiming by her RLA claims. Instead, she's claiming that because of her request for union representation, she was subjected to an insubordination charge. And there's a distinction. In the case of Brotherhood, it's a Fifth Circuit case, Brotherhood of Railroad Trainmen versus Central of Georgia, our company. The Fifth Circuit expressly had a similar situation where an employee claimed that his status as an employee should be determined by the court. The court expressly stated that that claim was rightfully to go to arbitration. However, simultaneously, he also alleged wrongful discharge under the Railroad Labor Act, and the court kept that part of his claim. In fact, that piece is especially instructive in this particular case because of the language that the Fifth Circuit said there. In that case, they said that in circumstances such as this, where there may be a claim that's subject to both the CBA, the Collective Bargaining Agreement, and also the Railroad Labor Act, they said in that scenario, the district court may find itself in an inescapable position of necessarily passing on the appellee's claim that falls under the CBA. So appellate argues here, it's not that she doesn't have a claim under the CBA. She can certainly proceed under the CBA and ask whether or not she had a right to representation. But that is not an issue that's before the court. And the Fifth Circuit has said that if it's not an issue before the court that's subject to the CBA, the district court is not to touch that issue, but instead is to look at the issues that come under the RLA. And in that particular case, the district court specifically stated that a claimant such as Ms. Wright can bring a claim for wrongful discharge or interference with her union-protected activities under the RLA. So it could simultaneously be that Ms. Wright can proceed under the CBA, but that does not take away the fact that she has pled facts that show that vicarious anti-union animus may have motivated her termination. Ms. Murphy, I just don't want you to run out of time before you could talk about the Title VII claim. The district court's ruling there is just a paragraph, but isn't it discernible that he based his dismissal on his reading of your complaint to not have alleged actual knowledge by the decision makers as to your client's protective activity? So you want to speak to that, whether that's incorrect legally and or factually? Absolutely. That is incorrect because we're still at the complaint stage where Ms. Wright is able to set forth the elements of her prima facie case. Not only that, but Ms. Wright's complaint states a number of facts where there is circumstantial evidence that shows that the carrier wouldn't have knowledge. In paragraph 48 of Ms. Wright's complaint. Well, but before we before we argue that knowledge, the Union Pacific responded, citing five unpublished decisions of ours that seem to suggest you have to allege actual knowledge. It can't just be temporal proximity. In your reply brief, you cited the Supreme Court's Breeding decision and our McCoy decision. And I'm sure you remember those. But when I looked at the full quotes, both of them do contain knowledge as well as proximity. In each of the cases cited by the appellee, those were not at the pleading stage. And each of those cases, it was the prima facie case did need to be proved. But we're not at that stage at this point. In the United States Supreme Court, the appellee cited in her reply, the United States Supreme Court has expressly stated that if the facts give inference to one of the elements necessary, it satisfies the requirements of rule eight. And in this particular case, Mr. Wright has played a number of facts that suggests that the carrier would have had notice. And if you would like me to go ahead. So in paragraph 48 of appellate lawsuit, she specifically states that prior to merchant who ultimately charged her with insubordination, charging her with insubordination and changing her to it and her willingness to provide union representation. Merchant called ISIL, which is in the Pacific Labor Department. The Friday before this event, Miss Wright had filed an internal complaint to Union Pacific's old department. It is presumable that ISIL, who is in the Labor Department, would have had knowledge of this rights internal complaint made on July 20. And so when Miss Merchant called Mr. ISIL on July 23rd to find out what to do, it is certainly plausible that ISIL had knowledge of the complaints. And he is the one who instructed merchant to let Miss Wright know that potential discipline was looming. And so there are certainly facts within the complaint that suggests. Notice and knowledge about it. All right, Madam Clerk, give Miss Murphy two minutes to address the title seven and put two over there with Miss Graham. So if she needs it, she'll have the two as well. Address your title seven. Miss Murphy, the clock's running. OK, and so as far as title seven, other than what I've just provided with regard to notice, Miss Wright has alleged each element of her retaliation claim. She has obviously alleged a protected activity. She has alleged the adverse action that happened. And then she's also alleged timing. The attack on notice is also satisfied by the allegations within the complaint that show that it is plausible that the federal had the requisite knowledge. Still argues that at this stage of the lawsuit, she is not able to produce evidence and is not required to produce evidence of knowledge. That stage will come when discovery is allowed. And then she can investigate whether Jim Isolde knew about her internal complaint that she had made three days before the area determined to charge with insubordination and instructed Miss Merchant to. So do that. All right, you're good. You don't have to use it all. Just want to make sure you covered it.  All right. You you're good. All right. Well, you've you've still reserved your your rebuttal time. So we'll hear now from Miss King from the EOC as Amicus. May please the court and King on behalf of Amicus US equal opportunity. Yes. U.S. Equal Employment Opportunity Commission. I'll focus on the title seven retaliation claim because that falls under a statute you see enforces. I can first address the question, Judge Higginson, that you posed about the Union Pacific's argument that Miss Wright was required to allege actual knowledge. And as I read Union Pacific's argument, it seems to say that if Miss Wright had included a line in her complaint that said something like on information and belief, the decision maker had actual knowledge of the protected activity, the twenty eighteen complaint. Then that would be enough to satisfy rule eight and survive a twelve B six motion. But in fact, what Miss Wright offered in her complaint was much more than that. As Miss Murphy was explaining, the complaint alleged facts that allow an inference that that Miss Merchant was aware of the twenty eighteen complaint. And in particular, I want to highlight the change in the allegation that Miss Merchant changed her approach to the discipline for the infraction for the alleged infraction. After Miss Miss Wright filed her twenty eighteen complaint in particular, Miss Merchant had said that she was willing to proceed with coaching with representation. And there was even a date set for that representation. And then Miss Merchant, as Miss Wright alleged, didn't show up for that meeting and actually wasn't at work today. Now, perhaps in discovery, there would be an explanation for why Miss Merchant didn't appear at that meeting. But a fact finder could ultimately infer without an explanation that the reason was because she learned in the meantime of the protected activity. I just want to add also that in terms of the cases that Union Pacific cites on the question whether Miss Wright was required to allege actual knowledge. And that's at page twenty four and twenty five of the response brief. Again, as Miss Murphy said, those are all summary judgment cases. And as this court emphasized in Segalese, a plaintiff title seven plaintiff is not required to plead a prima facie case in order to survive a motion to dismiss the 12B6 motion. I'd also like to point out the authority. Your best authority was outly, even though the court ultimately ruled against the plaintiff there. Is that correct? That was authority offered just for the temporal proximity point, Your Honor. But I actually think that one of the authorities that Union Pacific cited, the Robinson decision is helpful because that case points out that there might be a situation at summary judgment where a decision maker denies the knowledge of protected activity. But even where a decision maker denies knowledge, it's still possible to survive summary judgment. And you said both because of immediate proximity and because of the behavior that could have been evasive and suggested awareness. And that's the case here. And Robinson cited in particular the decision makers changed behavior following complaints and evidence of pretext that even where the decision maker denied knowledge of the protected activity. There was enough to satisfy a prima facie case of knowledge. They're right that constructive knowledge doesn't work. That's correct. And our brief didn't argue constructive knowledge. We argued that there were sufficient facts that to make knowledge plausible in this case, which is which is all that's required under this court's precedent at the at the pleading stage. And if I could just add one more thing, you know, Judge Higginson, you mentioned outly. And that stands for the proposition, among other precedents, that very close temporal proximity is enough at the prima facie stage. And here with the 2018 complaint, there was very close proximity. Indeed, just three days between the 2018 informal complaint and Miss Wright suspension and her termination occurred only one month later. But that's a separate question from the knowledge issue. But to the point on the proximity, you're not contending. I don't really hear the argument contending that the initial complaint, the actual litigation, I think, went on through the beginning of 2018. That's proximate enough, really, to to make it in and of itself. That's right. We don't make that argument, Your Honor. But it's not the case to the extent Union Pacific suggests that that temporal proximity is required. So a distant event, a distant protected activity could be the cause. But an employee would have to provide other evidence. And here, as we argue, the other evidence that could allow the inference that the 2016 protected activity was connected to the to the adverse actions is just the intervening protected activity. And the fact also that Ms. Burchett admittedly did have knowledge of that prior prior activity. But, yes, you're right. It wouldn't be enough on its own. It's not temporally proximate enough to survive a prima facie case. That summary judgment. All right. All right. Thank you, Ms. King. We'll shift over to Ms. Graham. Thank you, Your Honor. May it please the court. Counsel, I'm going to start with the Title 7 claims since that's the one we've been spending the most time on and where we just left off. The question here is whether Ms. Wright pled sufficient facts in her second amended complaint to establish that her termination and her removal of service were the result of retaliation for protected activity under Title 7. When reviewed in totality, the answer to that question is no. The complaint actually does not permit the inferences that are offered by Ms. King and Ms. Murphy in the argument today. In fact, the complaint, when you review it, tells a story of an employee who is does not understand the representation rights provided to her as a union member and is frustrated by the fact that she was terminated. It also talks about the relationship between Ms. Wright and her supervisor, Ms. Burchett. And it specifically states that when that relationship changed, had nothing to do with any activities that were protected under Title 7. It specifically alleged... Counsel, so reading the complaint again, we've got to read this at the 12B6 stage, most favorably to the plaintiff. And so doesn't the complaint include the allegation that she called the EEOC line at Union Pacific on like a Friday? And by Monday, she noticed that her supervisor's demeanor toward her, her approach toward her had changed, correct? And so she sort of alleges proximity plus change in behavior. I mean, is that not enough? Plus the protected activity, indisputably, I would presume that she alleged she called the EEOC line. So how is that not enough? Well, for two reasons, Your Honor. I think first of all, the complaint alleges that the change in behavior of Ms. Merchant towards Ms. Wright changed long before that, long before this entire incident that we're here to talk about. Specifically to your question about the timing of her calling the EEO line and then returning to work on Monday. The complaint alleges that when she returned to work on Monday, she was again given the opportunity to proceed through a coaching session and explained to that there was no opportunity to have a union representative present there. So, in fact, the behavior was the same. She was provided that opportunity again. And when Ms. Wright continued to say that she would not proceed with the coaching and she was warned that if that was her decision, she would be removed from service for insubordination. And that's exactly what happened. I'm sorry to interrupt, but I'm just trying to get questions in. What about the allegation that her supervisor didn't show up the day the union representative and Ms. Wright were ready to go through the coaching session? I don't think that, Your Honor, those allegations actually go to the question here. Because at that point, she had already been removed from service for the insubordination. And so pursuant to the process that's provided to her under her union agreement, she was removed from service. She was charged with the violation. And then she proceeded to a hearing. So at that point, she had already been given numerous opportunities to proceed through the coaching session and didn't comply. And so at that point, essentially, the ship had already sailed on that issue. And she had been charged and was going to proceed with the hearing for discipline. But she's at the 12B6 stage. She doesn't have to prove her whole case. The district judge didn't rely on what you just said. He's just talking about, you know, you can't come in and make an abstract assertion. So what in the complaint is abstract? He says something about you've got to be more than speculative to the relief. He devoted eight lines, one, two, three, four, five lines to the retaliation claim. And he doesn't say anything like what you just articulately said. But he doesn't. He just gives it the back of the hand. So it's 12B6. You know, he doesn't say any of that. I mean, the point is it's 12B6. We all know what Iqbal says. But it's a pleading, and it's a prima facie case. I mean, it just seems that you're urging what might otherwise be at a summary judgment kind of argument to say, well, you know, whatever. But it's just 12B6. So how much detail, I guess to answer the question, I mean, how much detail are you asserting the plaintiff in this case would need to have put in there just to stay in court? Yes, Your Honor, I agree with you. This is a 12B6 stage. She does not have to prove her case by any means at this point in the litigation. However, she does need to plead enough to actually support her claim here. And the issue here is that her complaint is completely silent on whether any decision-maker, she doesn't have to say who it is or what exactly they knew, but she does not mention at all that any decision-maker was aware of this internal complaint. Nor does the complaint contain any allegations regarding how that internal complaint may have changed the calculus. She simply alleges that an internal complaint occurred and then goes back to the allegations regarding what happened with the request for representation, the coaching session, and her ultimately being, excuse me, Your Honor, pulled from service. Do you agree with both opposing counsel that the five cases that you cite are summary judgment cases? Yes, Your Honor. Actually, the majority of the cases cited by all parties in this case were summary judgment cases. There's not much case law out there that addresses this issue specifically. Why do you think that is? Because I think it's rare to get a dismissal on a case like this, Your Honor. I agree. Well, the court always loves candor from counsel, so it is much appreciated. You're not abandoning your client, but it's always good to have candor. Thank you, Your Honor. You're not trying to defend dismissal. It's certainly not your fault, but the paragraph is quite cryptic and short and seems to imply she had to bring evidence and maybe even seems to credit your client's statement that may be proven true in the long run that she refused coaching because she disputes that in the complaint. So the district judge, to my eye, was a little afield there. No, Your Honor. I mean, I agree with the point you're making on the language there, but I think if you look at his order, he's clearly applying the standard for a motion to dismiss. I mean, he states originally it's based on a dismissal for a failure to state a claim, and then the judge also articulates the appropriate standard about her being able to present enough facts that are plausible on the claim. And so while I understand what counsel's argument is on the sentence regarding evidence, I don't think that's the standard that the court was applying here. I think he was saying that there was not sufficient evidence alleged in the complaint to meet her burden on a 12B6 standard. Counsel, what the court said was that the plaintiff had to assert a plausible claim supported by useful facts. What are useful facts? Well, Your Honor, I don't know that I want to parse the language used by the lower court judge here, but in my interpretation, that would be facts that support the claim. There are certain facts that must be alleged to support a claim that is brought in a court. And so my understanding of that would be that there have to be sufficient facts to make that claim plausible for it to withstand a motion to dismiss. Well, but to Judge Higginson's points, when the district court referenced useful facts, was he requiring the plaintiff to plead knowledge or to go beyond what would be a prima facie case to survive a motion to dismiss? How are we to know? I think the court was correctly asserting the standard that the plaintiff has to allege the facts that are required for her claim here. And as Union Pacific argued there and is arguing here today, that that didn't occur. Counsel, if you could respond to the counsel opposite's discussion of the RLA claim, how is this not a minor dispute? Well, Your Honor, I think it is a minor dispute. I think the claim that she is making here under the RLA, she's attempting to argue that because she was not afforded union representation for a coaching session, that was retaliation. The problem with that is that the RLA does not provide her with that right to coaching at or to union representation at a coaching session. And there's no other law that provides her with that right. If such a right exists, it exists solely in the collective bargaining agreement, thus making a case that is dependent upon the interpretation of the collective bargaining agreement. That makes it, to Your Honor's point, a minor dispute under the RLA, and it must proceed through arbitration, which is what Ms. Wright is doing. Because this is a minor... Well, what if counsel's point that she could proceed through arbitration? And my understanding is there's an arbitration proceeding that is at some stage of development. But not only could she do that with regard to a minor dispute, but she could assert other claims under the RLA. That's what she's doing here. She can assert claims under the RLA if she is asserting a right provided by the RLA or if she is asserting a right like her Title VII claim that exists outside of the RLA. The problem that she has with the claim that she's attempting to assert here is that she is attempting to assert a claim based on union representation for this coaching session. And that is solely provided for, if at all, by the collective bargaining agreement. The collective bargaining... Sorry, Your Honor. I think that if you look at the sections that are cited to you by counsel in the RLA, that makes the district court's decision clear. The RLA is focused on the pre-certification action of employees, so the development of a union and the selection of union representation. It does not go to the specific right of a specific employee to have a union representative present at all issues. There's no question here that Ms. Wright and her union brethren had selected union representatives. And there's no question here that she was a member of a union that was collectively bargaining on her behalf with the railroad. The conclusion reached by the district court is also supported by the Andrews case, which is a U.S. Supreme Court case, which is analogous in that the issue there was whether the railroad was required to bring an employee back after he had suffered injuries in a car accident. Similar to what the district court found here, that was a question that was governed by the collective bargaining agreement, thus making it a minor dispute. Also critical in that case is that he was attempting to reframe his claim in that case as wrongful discharge, and that didn't change the essence of the claim. Counsel here just mentioned in her argument is that she's claiming that not so much that she had this right to union representation, but that she was requesting union representation, and that somehow changes the claim. It does not. The issue here is whether she was entitled to that union representation, and that is based solely upon the collective bargaining agreement, thus making this a minor dispute under the Railway Labor Act. And for those reasons, the court properly dismissed it. I'd like to turn now to the... Yeah. No, continue. Oh, thank you. I was going to turn briefly to the Texas Labor Code claims here. The lower court also properly dismissed both of those claims, because just like with the RLA, the Texas Labor Code does not provide the right to union representation that Ms. Wright is asserting here. And it is also, for the same reasons that the RLA cannot proceed, the Texas Labor Claim cannot proceed because it is preempted by the RLA. The sections of the Texas Labor Code that counsel cites to, first, they allow all people to form unions. Again, there is no question here that Ms. Wright was a member of a union. The only right conferred by the statute in that section is the right to organize into a union. It then prohibits interference with an individual's right to work, and says that that individual cannot be denied the right to work because of lack of membership in a union, or the decision to not be a member of a union. But to proceed under that claim, you have to be proceeding with a right that is provided by the Texas Labor Code. And there is no section in the Texas Labor Code cited by Ms. Wright or otherwise that provides her with the right to union representation at the coaching session, which is at issue here. So the claim is preempted, was both dismissed appropriately because it simply does not provide a cause of action for Ms. Wright, and also because it is preempted by the Railway Labor Act. Because, again, it relies upon the interpretation of the collective bargaining agreement, and is thus subject to arbitration. So we are requesting, Your Honors, that this court affirm the decision of the lower court in its entirety. Thank you. All right. Thank you, Ms. Graham. Appreciate your argument. All right. We're back to you, Ms. Murphy. You have some rebuttal time. You're muted. Excuse me. Ma'am. Appellant wants to be clear that in the Fifth Circuit case of Brotherhood of Railroad Trainmen versus Central of Georgia, our company, the Fifth Circuit specifically stated that an employee such as Ms. Wright can indeed bring a post-certification claim when her complaint alleges that the carrier interfered with her choice of union representation during the collective bargaining process or resolution of a grievance. In Ms. Wright's complaint, she specifically articulates that the carrier suggested to her that she engage the union representation of a California union representative. Ms. Wright and the California union representative did not wish to proceed with the California rep as the rep. That was on Friday, July 20th, that that situation occurred. And following which, Ms. Wright specifically pleads in her complaint that Ms. Merchant becomes frustrated, and she thus files her internal EEO complaint. Under the RLA, the RLA 45 U.S. 152 third specifically provides that representatives for the purpose of this act shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other. Given the fact that the carrier suggested a rep which Ms. Wright did not agree to, and given the fact that after that, things went awry, it certainly is plausible that Ms. Wright has therefore demonstrated an interference with her choice of union representation. The Fifth Circuit in brotherhood stated that when a complaint sets forth plausible facts that a carrier is using a disciplinary hearing against an employee as a guise, but thwarting, frustrating, or undermining the effectiveness of the union, dismissal of the 45 U.S.C. section 152 third claim is improper. And not only the Fifth Circuit, but there's been a number of circuits that have recognized that there is a post-certification claim in limited circumstances, in circumstances where the plaintiff is able to show that any sort of anti-union animus was demonstrated by the carrier. Ms. Wright's complaint certainly demonstrates that the carrier's motivation may have been triggered by Ms. Wright's consistent request for union representation. They certainly suggest so by the sudden switch after Ms. Wright declines the representation offered by the carrier and decides that she wants her own local representation for the grievance situation. Does it make any difference if she if she wasn't entitled to representation at all? I mean, isn't the railroad's argument that this was a coaching session? It wasn't disciplinary, and therefore she wasn't really entitled to any union representative to be there in the first place. So wasn't what the railroad giving them giving her effectively extra? No, Your Honor. That that issue should not really be argued at the district court level. That's an issue for the CBA. So in that scenario, that's where the Fifth Circuit has said that the district court should not opine on an issue that is regulated by the CBA if the plaintiff has sufficiently stated a claim that shows that her termination may have been caused by either interference with her right to representation or her choice of representation, not whether or not she could have a representative for her choice of representation and or if the complaint shows animus towards union protected activity. Of course, there is certainly enough facts within the complaint to suggest that Union Pacific appears to Miss White's request for union representation. But no, for her to state a claim under the R. L. A. She does not have to prove entitlement to a right. Instead, she has to prove that activities of the carrier was somehow influenced by her request for union representation or the carrier interfered with her choosing of the representative that she desired. All right, Miss Murphy, you timed it perfectly. You hit that period. You hit that period right at the zero. Few people make the mark like that. But you were able to conclude your remark. All right. This concludes the argument in this case. We appreciate the briefing of all counsel and certainly.